*250 OPINION OF THE COURT
David B. Saxe, J.
The court here addresses the plaintiffs’ application to disqualify the law firm of Nixon, Hargrave, Devans & Doyle (Nixon, Hargrave) from representing defendant Thomas H. Gosnell (Gosnell) in this action.*
This action stems from the acquisition by merger of the Lawyers Co-operative Publishing Company (LCP) by plaintiff Thomson U.S. Inc. (Thomson). The merger was accomplished by Thomson’s creation of a wholly owned subsidiary corporation, known as ITI (LCP) Inc., which then was merged with LCP, with LCP designated as the surviving corporation, owing to the goodwill and prestige associated with that corporation’s name. LCP’s former shareholders received consideration of approximately $800 million, for which Thomson received LCP’s stock.
The April 28, 1989 agreement and plan of merger (the Agreement) included a provision requiring Thomson to deposit $16,200,000 in escrow to be used, inter alla, to indemnify Thomson and/or the surviving LCP corporation against losses or claims asserted against them due to any "misrepresentations, breach of warranty or failure to perform or fulfill any covenants or agreements contained in this Agreement”. If any funds remained in the escrow account after the expiration of one year from the "Effective Date” of the Agreement, or if no claim against the account was made within that time, the funds were to be released to LCP’s former shareholders.
Plaintiffs claimed against the escrow funds within the one-year period, alleging breaches of warranty and misrepresentation, and the pendency of an Internal Revenue Service (IRS) audit of LCP for the alleged underpayment of taxes.
Prior to the merger, and for a period of more than 50 years, Nixon, Hargrave was general counsel to LCP, advising LCP over the years in a wide variety of matters. It is, in fact, undisputed that Nixon, Hargrave continued to render general legal advice at the request of LCP employees even after the completion of the merger, until Thomson allegedly recognized the impropriety of the matter, and directed LCP’s employees to cease communication with Nixon, Hargrave.
*251 Plaintiffs now seek to disqualify Nixon, Hargrave from representing Gosnell, the designated representative of the selling shareholders, on the grounds that the representation of the selling shareholders by Nixon, Hargrave conflicts with Nixon, Hargrave’s prior representation of LCP since Nixon, Hargrave rendered legal advice to LCP prior to the merger on the very matters which are now in dispute in the suit against the selling shareholders.
Gosnell defends Nixon, Hargrave’s representation of himself and the interests of the selling shareholders, claiming that the interests of these parties are not adverse to Nixon, Hargrave’s former client, LCP, but only to Thomson, which is, allegedly, the only real party in interest. Gosnell contends that the "new” LCP created by the merger is not the entity which Nixon, Hargrave represented for five decades, so that no former client of the law firm appears in a position adverse to Gosnell even if the "new” LCP has a valid interest in the action. Gosnell also argues that even were the present LCP found to be a former client of Nixon, Hargrave, the issues raised in the plaintiffs’ complaint are not substantially related to any legal advice ever rendered to LCP by the law firm and, in any event, plaintiffs knew that Nixon, Hargrave represented the selling shareholders, and waived opposition to that representation, by failing to object at the earliest opportunity.
The proscription against an attorney representing a party whose interests are adverse to those of a former client is well known. The obligation of an attorney to preserve the confidences and secrets of his or her client necessarily continues even after the representation ends (Cardinale v Golinello, 43 NY2d 288). The former client "is entitled to freedom from apprehension and to certainty that his interests will not be prejudiced in consequence of representation of the opposing litigant by the client’s former attorney” (supra, at 296). The right of a party to counsel of his or her own choice must be balanced against the need to maintain the highest ethical standards and the confidence of the public (Emle Indus. v Patentex, Inc., 478 F2d 562) and, as is often noted, an attorney "must avoid not only the fact, but even the appearance, of representing conflicting interests” (Cardinale v Golinello, supra, at 296).
Mere adversity alone does not provide grounds for disqualification. To warrant disqualification, the former client moving for the relief must show that the matter in which the former
*252 attorney appears on behalf of the adverse party is substantially related to matters in which the attorney represented the former client (Code of Professional Responsibility DR 5-108 [eff Sept. 1, 1990]; Evans v Artek Sys. Corp., 715 F2d 788). The movant must meet a heavy burden of proof to establish that the issues in the prior and present cases are " ‘identical’ or 'essentially the same’ ” (Government of India v Cook Indus., 569 F2d 737, 740). The representation in the prior case must be such that it is reasonable to assume that the former attorney might have had access, or acquired information related to the subject matter of the present litigation (Emlie Indus. v Patentex, Inc., supra, at 571). It is not necessary to show that confidential information will be disclosed, once the reasonable probability of disclosure is shown to exist (see also, Greene v Greene, 47 NY2d 447, 453).
There is no difficulty here in ascertaining that the issues raised in the present litigation are substantially related, indeed are identical to, matters upon which Nixon, Hargrave rendered legal advice to LCP in the course of its former representation of that corporation.
The specific matters in dispute are (1) plaintiffs’ claim for damages stemming from the "improper accounting treatment” of certain client contracts, identified as "escalator contracts”, resulting in alleged overstatements of accounts receivable, net sales, net income and other financial statements for the years 1987 and 1988; (2) a claim arising from the alleged underpayment of taxes, and understatement of tax liability by LCP, regarding LCP’s accounting treatment of certain prepublication costs, allegedly in violation of the Internal Revenue Code, upon which issue LCP is currently being audited by the Internal Revenue Service; and (3) a claim alleging LCP’s underpayment of taxes and understatement of tax liability due to LCP’s alleged improper treatment of a series of transactions effecting the disposition of a membership division of an entity known as Research Institute of America (RIA), a subsidiary of LCP. This transaction is also presently under IRS scrutiny in the pending audit.
Nixon, Hargrave admits serving as LCP’s general counsel, of course, but denies that it ever gave LCP any "accounting advice” on any matter, including those issues contained in the complaint. Accounting advice was evidently rendered to LCP by its accountants, the firm of Deloitte Haskins & Sells (now, Deloitte & Touche). However, Nixon, Hargrave does admit that the RIA transaction was structured by the law firm "in *253 accordance with tax advice rendered by the accountants,” and that the firm "reviewed the tax issues involved in the RIA transaction” and "worked closely” with the accountants’ transaction. Nixon, Hargrave also admits providing legal advice to LCP on "certain limited aspects” of the escalator contracts in dispute, and does not deny the preparation of a lengthy opinion letter to LCP regarding those contracts.
The law firm apparently believes that because the tax and accounting advice came originally from LCP’s accountants, and not from Nixon, Hargrave, that Nixon, Hargrave did not represent LCP with regard to these matters, even though Nixon, Hargrave utilized the information in advising LCP how to proceed with its business. Using the same reasoning, a law firm might deny rendering legal advice to its client in a medical malpractice action, because the medical opinion on which the action was based came from the physician retained for that purpose, and not from the law firm. Nixon, Hargrave’s argument that it did not generate the tax and accounting information of which plaintiffs complain might be relevant if the plaintiffs were seeking to make the law firm liable for the allegedly improper advice, but that is not the case here. Clearly, Nixon, Hargrave’s utilization of the tax and accounting advice and involvement in the transactions of the RIA matter and the client escalator contracts amounts to the rendering of legal advice on issues substantially related to those raised in the present matter.
There can also be little doubt that the firm’s involvement was such that it had access to relevant and privileged information regarding the matters now in dispute, so as to suggest that need for its disqualification (Cardinale v Golinello, supra). In fact, the plaintiffs complain that they have already had occasion to deny defendants discovery, on the grounds of attorney-client privilege, of a document which had been prepared by Nixon, Hargrave in the course of its representation of LCP.
The difficulty presented by this motion is not, then, whether the law firm represented LCP in matters substantially related to the present dispute, nor whether the firm had access to confidential information, but, rather, whether or not Nixon, Hargrave’s representation of the selling shareholders is adverse to the interests of its former client, LCP, or whether the LCP which survived the merger can be considered a former client of Nixon, Hargrave at all.
*254 Gosnell’s main defense to the disqualification of his attorneys is based on the case of International Elecs. Corp. v Flanzer (527 F2d 1288), a case which presents several parallels to the present matter. International Elecs. Corp. involves a suit by a parent corporation against the selling shareholders of a corporation acquired by the parent corporation by means of a merger with a subsidiary of the parent corporation. The selling corporation, Elmenco, merged with the subsidiary, Electro Motive Corporation (or EMC), with EMC as the survivor of the merger. Elmenco, in the words of the court, became defunct.
The parent corporation and EMC moved to disqualify the attorneys representing the selling shareholders on the grounds that one of the defendants was a retired partner in the firm, and might be required to testify, and on the grounds also that under Code of Professional Responsibility Canon 4, the seller’s attorneys should not be permitted to accept employment adverse to its former client in regard to matters substantially related to the subject matter of the earlier representation. The plaintiffs were suing the selling shareholders for damages caused by the defendants’ alleged misrepresentations made during the negotiations for the sale, violations of the Securities Act of 1933, common-law fraud and breach of contract.
In ruling against disqualification, the court reasoned that the merger was, "in a practical sense,” a sale, and that the law firm in question had represented the sellers. (International Elecs. Corp. v Flanzer, supra, at 1292.) Therefore, the law firm and the plaintiff buyers were always on opposite sides. The court felt that under the circumstances "[t]he earlier relationship of the law firm to the merged corporation cannot be a source of disqualification * * * even though a former client is surely entitled to protection” (International Elecs. Corp. v Flanzer, 527 F2d, supra, at 1292, citing Ernie Indus. v Patentex, Inc., supra [emphasis in original]).
The court also went on to discount the importance of the presence in the action of the party defendant who formerly was a partner in the law firm representing the selling shareholders.
While the facts of International Elecs. Corp. v Flanzer (supra) are similar to those in the present matter, essential differences exist, the most striking being the continuation of LCP’s existence, in almost entirely its original form, after the *255 merger. Under Business Corporation Law § 906 (b) (1) the surviving corporation of a merger comes to "possess all the rights, privileges, immunities, powers and purposes of each of the constituent corporations” along with the physical property of each corporation (Business Corporation Law § 906 [b] [2]). There is, therefore, some considerable likelihood that the corporation surviving a merger will be an entity very different from the original corporation. This is not the case in the present matter. The subsidiary with which LCP merged was but a shell, just short of a legal fiction, created solely for the purpose of the acquisition of LCP, so that the parties could avoid the difficulties of an outright sale of stock in favor of the more convenient form of transfer implicit in a merger. LCP, one of the firm foundations of the legal industry, retained its corporate identity, while ITI (LCP) Inc. disappeared forever, its limited purpose fulfilled. Thus, while the court in International Elecs. Corp. v Flanzer (supra) clearly felt that no plaintiff in the action was a former client of the seller’s law firm, and that the law firm had always represented the selling shareholders, and not the buyers, the interests of LCP, which for all practical purposes survived the merger intact, cannot be so easily dismissed.
The court in International Elecs, (supra, at 1292) suggested that even if the defunct corporation still could be considered as a client of the seller’s law firm, "there is no claim here that the law firm seeks to represent a third party against the successor by merger and to use its secrets to the advantage of the third party.” Yet LCP, represented for decades by Nixon, Hargrave, does indeed appear in the action in a position adverse to the interests of the selling shareholders, as if the selling shareholders were a third party who stood to benefit unfairly from access to LCP’s confidences.
This is a matter much in dispute. Gosnell contends that LCP can appear in the action as a plaintiff only in a nominal capacity as, in effect, Thomson is suing LCP, in the form of the selling shareholders, for breaches of the representations and warranties contained in the contract. Therefore, argues Gosnell, only Thomson is a real party in interest, and Thomson was never a client of Nixon, Hargrave.
The Agreement and plan of merger contains explicit provision for the indemnification of both Thomson and the surviving corporation, LCP, in the event of claims expenses or losses, including losses arising from third-party claims. In the event that Thomson and/or LCP, identified as the "Buyer *256 Indemnified Parties”, suffers any such losses, they are entitled to pursue their claim for the contents of the escrow fund against Gosnell, as the representative of the selling shareholders. Thus the Agreement itself contemplates the possibility of adversity between LCP and the selling shareholders.
While certain of the claims raised by the plaintiffs appear to relate solely to Thomson’s interest as buyer against the selling shareholders, the claim that improper tax treatments and accounting practices have resulted in an audit of LCP by the IRS, with the potential for substantial tax liability, has the potential to affect the interests of both Thomson and LCP. Under section 9.01 (c) of the Agreement, LCP as a buyer indemnified party may claim against the escrow fund for any loss or expense arising out of a third-party claim. A third-party claim is loosely identified as "an administrative proceeding, actions at law or suit in equity or otherwise.” Both in section 9.01 (e) and in the separate escrow agreement the parties indicate that the loss from such a third-party claim may not be immediately ascertainable, and so can be estimated. Consequently, it follows that the third-party claim, which quite likely includes an IRS audit, as an "administrative proceeding”, need not have yet resulted in concrete, ascertainable damages. As a result, the Agreement explicitly provides for an action by LCP against the shareholders’ representative, Gosnell, such as the complaint alleges, and LCP is a real party in interest whose interests are adverse to those of Gosnell.
According to Gosnell, the selling shareholders’ interests are not adverse to those of LCP with regard to the potential tax liability, since it is in the interest of both Gosnell and LCP to prove to the IRS that LCP did not understate its tax obligations by means of faulty accounting practices. But the present action will not resolve the question of whether or not LCP owes the IRS taxes, and Nixon, Hargrave is not representing any party in connection with the audit. The selling shareholders’ interest in the present litigation is to block the buyer indemnified parties from receiving any part of the escrow funds, whether or not LCP is found to be liable for back taxes or penalties, and in that capacity the selling shareholders’ interests are certainly adverse to the interests of LCP. As the legal representatives of Gosnell, it is Nixon, Hargrave’s obligation to protect the selling shareholders’ interest in the escrow fund, and so, without doubt, Nixon, Hargrave stands in a position of adversity to its former client LCP, on matters *257 identical to those in which Nixon, Hargrave represented LCP prior to the merger. Disqualification of Nixon, Hargrave as Gosnell’s attorneys must follow.
The court does not accept Gosnell’s further arguments of "joint representation” and waiver. Nixon, Hargrave represented LCP. Although the firm may have dealt on many occasions with Gosnell, who was LCP’s chairman of the board and chief executive officer, and may also have represented Gosnell on personal matters, Nixon, Hargrave’s loyalty as LCP’s attorneys was to the corporate entity, not its officers, directors or shareholders (Evans v Artek Sys. Corp., supra, at 792). There are no facts which would justify a finding of any joint representation of LCP and Gosnell, such as would entitle Gosnell to retain the services of Nixon, Hargrave in a suit against LCP based on any confidences to which he may have been privy as LCP’s chairman and CEO. It is firmly established that the right to assert the attorney-client privilege of an acquired corporation passes to the new management of the corporation, and is not Gosnell’s to waive (Commodity Futures Trading Commn. v Weintraub, 471 US 343, 349).
Even if Nixon, Hargrave were to have jointly represented Gosnell and LCP, so that neither was permitted to assert the attorney-client privilege against the other (see, Federated Assocs. v Johnson Co., 102 AD2d 841), this would not alter the facts requiring Nixon, Hargrave’s disqualification. The ethical duty to preserve a client’s confidences is broader than the evidentiary privilege, and is applicable " 'without regard to the nature or source of information or the fact that others share the knowledge’ ” (Brennan’s, Inc. v Brennan’s Rests., 590 F2d 168, 172). The sharing of confidences between Gosnell and Nixon, Hargrave would not weigh against disqualification, it weighs in its favor.
The plaintiffs’ alleged delay in calling for disqualification of Nixon, Hargrave does not in this court’s estimation amount to a waiver of their right to do so. It is true that the Agreement identifies Nixon, Hargrave as a party to be provided with a copy of any notice intended for Gosnell, and it is true that Thomson acquiesced in the continuation of Nixon, Hargrave’s representation of RIA in the RIA transaction, which was nearing completion, even after the merger. However, the facts also indicate that plaintiffs only became aware of the potential for conflict over time, after Nixon, Hargrave appeared on behalf of Gosnell upon the service of Gosnell’s answer in August 1990. Since Nixon, Hargrave continued to offer legal *258 advice to LCP into early 1990, sometime after the completion of the merger, it is clear that neither party was aware of the potential for conflict for quite some time.
A former client who knowingly refrains from promptly asserting an objection to his or her adversary’s representation by former counsel may relinquish that right by waiver (Trust Corp. v Piper Aircraft Corp., 701 F2d 85), but the facts here do not establish such a relinquishment.
The few months between Nixon, Hargrave’s appearance in this action, and the making of the present cross motion, have not served to prejudice Gosnell. The action has just begun. Therefore, motion is neither improper nor untimely.
The facts of this case are unusual and compelling. The potent combination of the long and loyal service provided to LCP by Nixon, Hargrave, and the advantage which Nixon, Hargrave’s representation would afford the selling shareholders against LCP in this particular suit, warrant the drastic remedy of disqualification. The benefits of Nixon, Hargrave’s representation of Gosnell must be balanced against the need to preserve the public’s confidence in the profession, and the requirement that the appearance of a conflict be avoided (Cardinale v Golinello, supra). In light of the complexity of the issues raised on this motion, the court does not feel that either Gosnell’s refusal to relinquish its attorneys, or plaintiffs’ opposition to that representation, warrants the imposition of the sanctions both sides have demanded.
Accordingly, the cross motion to disqualify Nixon, Hargrave is granted.

 This application was made as a cross motion in response to Gosnell’s motion for a change of venue. The venue motion has been withdrawn with prejudice pursuant to an order of this court dated December 4,1990.