**CHEMICAL WASTE MANAGEMENT, INC., a Delaware Corporation, Plaintiff,**

v.

**James R. SIMS; James T. McVey; Adam J. Liff; Jan Liff; Judy Liff, custodian for Zachary Liff; Judy Liff, custodian for Terence Liff; Darren Liff; Daniel Liff; James C. Bow; Abe Freeman; Elizabeth Baisley; Gary Baisley; Kim Baisley–Wyatt; and Mike Schweitzer, Defendants.**

No. 94 C 1964.

United States District Court, N.D. Illinois, Eastern Division.

Feb. 2, 1995.

**502**

Kenneth J. Gumbiner, Randall W. Reavis, Greensboro, NC, James T. Hynes, Chicago, IL, for plaintiff.

James A. Cherney, Andrew E. Skopp, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Before the Court is plaintiff's motion for a protective order prohibiting defendants and their counsel of record from seeking or obtaining legal advice from the law firm of Gullett, Sanford, Robinson & Martin. For the reasons stated herein, plaintiff's motion is denied.

### Facts

Plaintiff, Chemical Waste Management ("CWM"), is a Delaware corporation with its headquarters and principal place of business in Oak Brook, Illinois. Diversified Scientific Services, Inc. ("DSSI") is a Tennessee corporation engaged in the business of processing mixed liquid wastes and providing on-site environmental remediation services at its plant in Kingston, Tennessee. Defendants are the former shareholders of DSSI ("former shareholders") who sold one hundred percent of their DSSI shares to CWM pursuant to a Stock Purchase Agreement. The present lawsuit arises from the alleged breach of representations and warranties contained in the Stock Purchase Agreement.

Since the inception of DSSI, attorneys from Gullett, Sanford, Robinson & Martin ("GSR & M") have acted as corporate counsel for the company. Allen D. Lentz ("Mr. Lentz"), a partner at GSR & M, signed the corporate charter and served as incorporator and registered agent of DSSI. Over the years, Mr. Lentz also performed a variety of legal tasks for the corporation, including reviewing its license applications, meeting with state regulators in connection with the processing of its permit applications, advising DSSI with respect to applicable laws and regulations, and evaluating and negotiating contracts regarding the removal of hazardous waste.

In late 1989, the former shareholders investigated the possibility of transferring ownership of DSSI through a sale of their shares to a CWM subsidiary. The former shareholders retained GSR & M for representation in connection with the proposed sale. During the summer of 1991, Mr. Lentz

and CWM attorney Jeffrey C. Everett ("Mr. Everett") exchanged several drafts of a proposed Stock Purchase Agreement. On September 4, 1991, Adam Liff ("Mr. Liff"), one of the former shareholders, and Mr. Lentz met with CWM Vice President Michael Lang and Mr. Everett at CWM's corporate offices to negotiate the unresolved terms of the Stock Purchase Agreement. At that meeting, the parties agreed upon a final purchase price and finalized the representations, warranties, and indemnities which are the subject of this lawsuit. Closing documents were delivered on November 1, 1991 at GSR & M's law offices in Nashville. The closing documents named Mr. Lentz as a party to whom notices relating to the former shareholders should be sent.

On February 9, 1993, CWM, through its attorney, Mr. Everett, advised Mr. Lentz as counsel for the former shareholders that CWM would file claims against the former shareholders. On April 28, 1993, Mr. Everett wrote Mr. Lentz, again as counsel for the former shareholders, asking him to review the claims and to attend a meeting to ask questions of CWM personnel familiar with the alleged problems at the DSSI facility and to begin negotiating a settlement. On May 20, 1993, CWM officials met with Mr. Liff and Mr. Lentz at GSR & M's law offices in Nashville. At this conference, CWM officials provided Mr. Lentz with specific information about the claims. On August 24, 1993, CWM officials met with Mr. Lentz and two independent experts retained by Mr. Lentz at the DSSI facility in Kingston. During this visit, CWM's claims were discussed at length, and Richard J. Dabolt ("Mr. Dabolt"), DSSI's General Manager, escorted Mr. Lentz and the two experts on a tour through the DSSI facility, pointing out alleged problems and answering questions. In each of these meetings, Mr. Lentz represented the former shareholders with the knowledge and consent of CWM.

In late 1993, Mr. Lentz sent Mr. Everett two letters in which he summarized the positions of the former shareholders with respect to CWM's claims and requested several additional documents from CWM. CWM subsequently provided Mr. Lentz with the requested documents. On February 15, 1994, CWM counsel John Van Gessel sent Mr. Lentz a detailed account of CWM's claims and requested a written response from Mr. Lentz. On March 29, 1994, CWM brought this action against the former shareholders. On November 3, 1994, Mr. Dabolt informed Mr. Lentz that DSSI objected to GSR & M's representation of the former shareholders in this litigation. On January 4, 1995, CWM brought this motion for a protective order prohibiting the former shareholders and their counsel of record, Latham & Watkins, from seeking or obtaining legal advice from GSR & M during the litigation.

### Analysis

A fundamental principle in the lawyer-client relationship is that a lawyer shall maintain the confidentiality of the information relating to the representation. *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir.1982). Courts have a duty to safeguard the sacrosanct privacy of the attorney-client relationship so as to maintain public confidence in the legal profession and to protect the integrity of the judicial proceeding. *Id.* (citing *American Can Company v. Citrus Feed Co.*, 436 F.2d 1125, 1128 (5th Cir.1971); *United States v. Agosto*, 675 F.2d 965, 969 (8th Cir.1982)). Disqualification of counsel is but one of several avenues available to a court in its exercise of this duty. *Id.* However,

> disqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary. A disqualification of counsel, while protecting the attorney-client relationship, also serves to destroy a relationship by depriving a party of representation of their own choosing.

*Id.* (citing *Comden v. Superior Court*, 20 Cal.3d 906, 145 Cal.Rptr. 9, 16, 576 P.2d 971, 978, *cert. denied*, 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 652 (1978)). Accordingly, motions to disqualify counsel should be viewed with extreme caution since they can be misused as techniques of harassment. *Id.* at 722; *see also Richardson–Merrell, Inc.. v. Koller*, 472 U.S. 424, 436, 105 S.Ct. 2757,

2763, 86 L.Ed.2d 340 (1985) ("We share the Court of Appeals' concern about 'tactical use of disqualification motions' to harass opposing counsel").

## A.  Substantial Relationship

The Seventh Circuit has promulgated the following test in analyzing motions to disqualify counsel:

> a lawyer may not represent an adversary of his former client if the subject matter of the two representations is 'substantially related,' which means: if the lawyer could have obtained confidential information in the first representation that would have been relevant in the second. It is irrelevant whether he actually obtained such information and used it against his former client, or whether—if the lawyer is a firm rather than an individual practitioner—different people in the firm handled the two matters and scrupulously avoided discussing them.

*Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1266–67 (7th Cir.1983) (citations omitted); *see also* RULES OF PROFESSIONAL CONDUCT FOR THE NORTHERN DISTRICT OF ILLINOIS (1991), Rule 1.9(a) ("A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which the person's interests are materially adverse to the interests of the former client unless the former client consents after disclosure").

■ CWM maintains that the former shareholders and their counsel of record should be barred from obtaining legal advice from GSR & M because the matters on which GSR & M represented DSSI before the sale are substantially related to the matters at issue in its current representation of the former shareholders against DSSI's parent company, CWM. Indeed, there is little doubt that the issues raised in this litigation are substantially related, if not identical, to matters upon which GSR & M previously rendered advice to DSSI. The gravamen of CWM's complaint is that the former shareholders breached warranties and representations contained in the Stock Purchase Agreement. Specifically, the complaint's allega-tions focus on the lack of applicable licenses, permits, and authorizations necessary for the proper operation of the DSSI facility, the unlawful storage of hazardous substances and radioactive materials at the DSSI facility, and the noncompliance of DSSI's assets, properties, and business with applicable laws and regulations. *See* Complaint, ¶ 10.

As corporate counsel for DSSI, Mr. Lentz routinely reviewed DSSI's license applications, met with state regulators in connection with the processing of DSSI's permit applications, advised DSSI with respect to applicable laws and regulations, and negotiated contracts on behalf of DSSI regarding the removal of hazardous waste. There is no question that Mr. Lentz had access to confidential information relevant to matters which are now in dispute; whether Mr. Lentz actually obtained confidential information during the former representation is beyond the scope of this Court's inquiry. *See Schloetter v. Railoc of Indiana, Inc.*, 546 F.2d 706, 710 (7th Cir. 1976) ("[t]he court, in these circumstances, makes no inquiry into whether confidential information relating to the matter involved in the subsequent representation did in fact pass to the attorney during the course of the former representation; his possession of such information will be presumed") (citation omitted). Accordingly, under the test articulated in *Analytica, supra,* there is a clear and substantial relationship between GSR & M's two representations. *See also Thomson U.S. Inc. v. Gosnell,* 151 Misc.2d 249, 573 N.Y.S.2d 375 (N.Y.Sup.Ct.1991), *aff'd.,* 181 A.D.2d 558, 581 N.Y.S.2d 764 (N.Y.App.Div. 1992); *G.F. Industries, Inc. v. American Brands, Inc.,* 245 N.J.Super. 8, 583 A.2d 765 (1990); *Koch v. Koch Industries,* 798 F.Supp. 1525 (D.Kan.1992).

## B.  Waiver

■ The former shareholders insist that CWM has waived any objections it might have with respect to GSR & M's present representation by failing to object within a reasonable time. Waiver is a valid basis for the denial of a motion to disqualify; a former client who is entitled to object to an attorney's representation of an adverse party on the ground of conflict of interest but who knowingly refrains from asserting it prompt-

ly is deemed to have waived that right. *Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir.1983) (citing *Central Milk Producers Cooperative v. Sentry Food Stores, Inc.*, 573 F.2d 988, 992 (8th Cir.1978); *Redd v. Shell Oil Co.*, 518 F.2d 311, 315 (10th Cir.1975)); *See also Cox v. American Cast Iron Pipe Co.*, 847 F.2d 725, 731 (11th Cir.1988) ("waiver is appropriate 'where the former client, having every opportunity to do so, fails to object to a new relationship involving [its] former attorney'") (citation omitted).

■ Although the length of the delay in bringing a motion to disqualify is obviously important, it is not dispositive. *Employers Insurance of Wausau v. Albert D. Seeno Construction Co.*, 692 F.Supp. 1150, 1165 (N.D.Cal.1988). A court should also consider such factors as when the movant learned of the conflict; whether the movant was represented by counsel during the delay; why the delay occurred; and whether disqualification would result in prejudice to the nonmoving party. *Id.; Commonwealth Insurance Co. v. Graphix Hot Line, Inc.*, 808 F.Supp. 1200, 1208 (E.D.Pa.1992); *Alexander v. Primerica Holdings, Inc.*, 822 F.Supp. 1099, 1115 (D.N.J.1993).

■ In the present case, CWM and its counsel have been aware of the adverse representation since at least as early as February 9, 1993, the date on which Mr. Everett advised Mr. Lentz that CWM would file claims against the former shareholders. Since that date, CWM consistently dealt with GSR & M as opposing counsel during the course of settlement discussions without objection: CWM asked GSR & M to review its claims against the former shareholders, sent corporate representatives to GSR & M's law offices in Nashville for settlement negotiations, invited Mr. Lentz to the DSSI facility in Kingston for additional negotiations, and voluntarily provided GSR & M with numerous documents relating to CWM's claims.

CWM objected for the first time on November 3, 1994, when Mr. Dabolt sent Mr. Lentz a letter stating that GSR & M's representation of the former shareholders in the pending litigation was unacceptable to DSSI and CWM. Significantly, CWM was represented by counsel throughout this twenty-one month period and could have easily sought disqualification earlier. Alternatively, CWM could have expressly limited its consent to GSR & M's representation of the former shareholders for the sole purpose of engaging in settlement negotiations.

An order prohibiting the former shareholders and their counsel from obtaining legal advice from GSR & M would unfairly prejudice the former shareholders at this stage of the litigation. For at least one year, GSR & M attempted to negotiate a settlement with CWM, retained experts, and thoroughly investigated CWM's claims at considerable expense to the former shareholders. If the former shareholders and their counsel of record are now barred from consulting with GSR & M, the former shareholders will have expended a substantial sum of money in attorneys' fees for legal services which would be of little value. To deprive them of the knowledge gained by GSR & M would unfairly impede the defense in light of the fact that GSR & M's participation in the settlement negotiations was invited by CWM.

Under these circumstances, CWM's twenty-one month delay in objecting to the conflict "can be reasonably perceived as an admission that the principles of confidentiality and conflict of interest are not significantly related to the procedural integrity of [its] case." *Glover v. Libman*, 578 F.Supp. 748, 767 (N.D.Ga.1983).[1] This conclusion is not extraordinary; courts have denied motions to disqualify brought after comparable, and even shorter, periods of undue delay. *See, e.g., Glover v. Libman, supra*, 578 F.Supp. at 767 (motion to disqualify denied when

---

1. Indeed, the Court is perplexed by the suggestion that GSR & M obtained confidential information during the former representation that it may use against its former client in this litigation. It is difficult to imagine what information in GSR & M's possession could now be deemed confidential in light of the fact that GSR & M

represented the former shareholders in settlement discussions for well over one year, during which it acquired score of documents from CWM and was put under no restrictions about discussing with the former shareholders the same issues about which it had formerly represented DSSI.

brought thirteen months after the grounds of the alleged conflict were known); *Jackson v. J.C. Penney Co., Inc.,* 521 F.Supp. 1032, 1034–35 (N.D.Ga.1981) (motion to disqualify denied after delay of approximately fifteen months); *Warpar Manufacturing Corp. v. Ashland Oil, Inc.,* 606 F.Supp. 852, 858–59 (N.D.Ohio 1984) (motion to disqualify denied after delay of approximately twenty-one months). Accordingly, the Court finds that CWM has impliedly waived any right to bar the former shareholders and their counsel of record from consulting with GSR & M in this case. CWM's motion is denied.

ENTER ORDER.