Kenneth GROSS, et al., Plaintiffs,

v.

SES AMERICOM, INC.
et al., Defendants,

No. CIV.A.RWT 03–102.

United States District Court,
D. Maryland.
Southern Division.

March 11, 2004.

Mark Douglas Colley, Lynn Estes Calkins, Holland and Knight LLP, Washington, DC, for Plaintiffs.

Robert P. Parker, Erika C. Birg, Paul Weiss Rifkind Wharton and Garrison LLP, Washington, DC, for Defendants.

### MEMORANDUM OPINION

TITUS, District Judge.

#### Introduction

The parties to a contract for the sale of a business[1] negotiated for over two years in an effort to resolve their differences over certain financial adjustments and other post-closing obligations. When the negotiations failed, the sellers filed suit. Over seven weeks after denial of a motion to dismiss two counts of the complaint and almost one year after suit was filed, the merged acquisition subsidiary of the buyer filed a motion to disqualify the attorneys who had continuously represented the sellers during the negotiations leading up to and subsequent to the execution of the sales agreement as well as in the litigation. The issue of disqualification was first raised by the movant only several weeks before the filing of the motion, which occurred just before the Christmas holiday was about to begin.

As explained below, the Court concludes that the motion is both lacking in merit and is untimely. Accordingly, because the motion is both too little and too late, it will be denied.

#### Factual History

In April 2000, Plaintiffs Kenneth Gross ("Gross") and the Laughton Estate Trust ("Laughton") entered into an agreement with Defendant SES Americom, Inc. ("SES Americom") for the sale by Gross and Laughton of their company, Columbia Communications Corp. ("Columbia")[2] to SES Americom.[3] Gross and Laughton ("Sellers") were the sole owners of all shares of capital stock in Columbia. The sale of Columbia was effectuated by an Agreement and Plan of Merger ("Merger Agreement") by which SES Americom agreed to acquire 100 percent of Columbia's capital stock from the Sellers. Pursuant to that Merger Agreement, Columbia was merged with CCC Merger Sub, Inc., a newly-formed acquisition subsidiary of SES Americom, which, following the merger, adopted the same name as Columbia. As a result of the sale, Columbia became a wholly-owned subsidiary of SES Americom. Because Columbia had FCC licenses and license applications active or pending at the time of sale, SES Americom's new subsidiary used Columbia's name and status as successor by merger to the Sellers' company in pursuing the applications.

In conjunction with the Merger Agreement, Gross, Laughton, SES Americom, CCC Merger Sub, Inc., and Columbia entered into an April 5, 2000 letter agreement in which (1) SES Americom agreed to take "all" reasonable actions to obtain a Satisfactory Order from the FCC regarding a 37.5$^N$ W.L. (37.7$^N$ W.L.) Replacement Application, and (2) SES Americom and the corporation surviving after the merger of Columbia into CCC agreed to use "reasonable commercial efforts" to prosecute an outstanding license application for authority to operate a satellite in

---

1. The sale of the business was effectuated by a sale to the buyer of all of the stock of the two sellers in their company which was then merged into a wholly-owned acquisition subsidiary of the buyer.

2. Columbia leased telecommunications satellite capacity for telecommunications services in specific orbital locations above the Earth.

The Federal Communications Commission ("FCC") governs the licenses for these activities.

3. The sale was actually made to GE American Communications, Inc. As a result of a number of business transactions not at issue here, it is now known as SES Americom, Inc.

the Ku-band at 47$^N$ W.L. If the FCC were to grant the Ku-band application within the agreed upon time frame, substantial additional consideration would be due to Gross and Laughton.

During the negotiation of the Merger Agreement, the law firm of Holland & Knight represented Columbia and its two sole shareholders, Gross and Laughton. The law firm of Hogan & Hartson represented SES Americom. The Merger Agreement itself specifies that Holland & Knight is to receive a copy of any notice given or made pursuant to the agreement to Columbia prior to, but not after, closing and to Gross and Laughton before and after the closing.

Subsequent to the closing, the parties began to dispute several aspects of the Merger Agreement, including whether SES Americom and its subsidiary, the newly-merged Columbia, were using reasonable commercial efforts to pursue the license applications pending with the FCC. Holland & Knight, as counsel for Gross and Laughton, and counsel for SES Americom exchanged a number of letters concerning these disputes. In November 2000, the parties exchanged letters detailing each party's objections to the Closing Balance Sheet. Holland & Knight was sent copies of these letters as counsel for Gross and Laughton. In December 2001, SES Americom sent Gross a letter concerning his promissory note, and also sent Holland & Knight a copy of the letter as Gross' counsel. Also in December 2001, Holland & Knight sent counsel for SES Americom a letter detailing its position concerning the FCC licenses. In that letter, Holland & Knight identified itself as counsel for Columbia's former shareholders. When the parties were unable to resolve their disagreements through negotiation, Gross and Laughton filed suit in this Court against SES Americom and the newly-merged Columbia.[4] In Count I (and only Count I) of the Complaint, Gross and Laughton specifically named Columbia as a defendant.

After Gross and Laughton filed their lawsuit, the parties, through counsel, continued to negotiate a possible settlement. On March 5, 2003, SES Americom and Columbia filed a Motion to Dismiss Counts I and II of the Complaint. Judge Alexander Williams denied that Motion on October 31, 2003. It is undisputed that approximately one month later, in early December 2003, counsel for SES Americom and Columbia, contacted Holland & Knight for the first time to assert that its representation of Gross and Laughton against the newly-merged Columbia constituted a conflict of interest. On December 23, 2003, Columbia filed its Motion to Disqualify Counsel.

### Applicable Law

The Maryland Rules of Professional Conduct provide that:

A lawyer who has formerly represented a client in a matter shall not thereafter: (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation

MRPC 1.9.

■■■ Disqualification is a drastic remedy since it deprives litigants of their right to freely choose their own counsel. *Buckley v. Airshield Corp.*, 908 F.Supp. 299, 304 (D.Md.1995); *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 146 (4th Cir.1992). The

---

4. Under the April 5, 2000 letter, the obligation to pay additional consideration to Gross and Laughton rests solely on SES Americom, while pursuit of the FCC applications is an obligation of both SES Americom and the newly-merged Columbia.

Maryland Rules of Professional Conduct expressly caution that motions to disqualify "should be viewed with caution....for [they] can be misused as a technique of harassment." MRPC. 1.7. Disqualification at the urging of opposing counsel is permitted only "[w]here the conflict is such as clearly to call in question the fair and efficient administration of justice." *Id.; see also Shaffer,* 966 F.2d at 146.

■ In evaluating a disqualification motion, a court must first determine whether an attorney-client relationship existed between the challenged law firm and the objecting client, and then resolve whether the matter at issue in the challenged representation is the same or substantially related to the matter involved in the prior representation. *Stratagene v. Invitrogen Corp.,* 225 F.Supp.2d 608, 610 (D.Md.2002). However, if the former client "was concededly aware of [the challenged law firm]'s representation of [the former client] but failed to raise an objection promptly when [it] had the opportunity," this failure will result in the waiver of the right to raise the disqualification issue. *Buckley,* 908 F.Supp. at 308.

■ When determining whether a party has waived its right to move to disqualify counsel, the Court must examine whether the party filed its motion in a timely manner. *See Buckley,* 908 F.Supp. 299 (1995). Timely service of a motion to disqualify helps to curb the potential use of the motion as a litigation tactic or to harass the opposing party. *See id.* Courts analyze a number of factors when considering whether the motion was timely made, including:

when the movant learned of the conflict; whether the movant was represented by counsel during the delay; why the delay occurred, and, in particular, whether the motion was delayed for tactical reasons; and whether disqualification would result in prejudice to the nonmoving party.

*Buckley,* 908 F.Supp. at 307, *quoting Employers Ins. of Wausau v. Albert D. Seeno Construction Co.,* 692 F.Supp. 1150, 1165 (N.D.Cal.1988).

### Discussion

#### (i) Timeliness

■ In this case, Columbia's motion must fail because it clearly did not raise its conflict allegations in a timely manner. In *Chemical Waste Management, Inc. v. Sims,* the court denied a motion to disqualify because, prior to filing its complaint, the party moving for disqualification engaged in a twenty-month settlement negotiation with opposing counsel. *See* 875 F.Supp. 501 (N.D.Ill.1995); *see also Trust Corporation of Montana v. Piper Aircraft Corp.,* 701 F.2d 85, 88 (9th Cir.1983) (movant's failure to object to opposing counsel's representation within 2 years and 6 months constituted a waiver of disqualification). Counsel for SES Americom and Columbia knew that Holland & Knight represented Gross and Laughton in the present action well before the pair filed suit in January 2003, because the parties participated in protracted negotiations over a period of two years from November 2000 until January 2003.

Columbia first argues that it was not required to raise the disqualification issue until after Gross and Laughton filed their Complaint. The Court disagrees, and finds the distinction to be one without a difference. *See Chemical Waste Management, Inc. v. Sims,* 875 F.Supp. 501, 505 (N.D.Ill.1995), *quoting Glover v. Libman,* 578 F.Supp. 748, 767 (N.D.Ga.1983) ("CWM's twenty-one month delay in objecting to the conflict 'can be reasonably perceived as an admission that the principles of confidentiality and conflict of interest are not significantly related to the procedural integrity of [its] case.'").

Second, Columbia argues that until Gross and Laughton filed their Complaint, it did not know that it would be named as a defendant. Therefore, according to Columbia, the years of negotiation should not be considered when determining whether the Motion to Disqualify was timely. The Court finds this explanation to be disingenuous because the failure of Columbia to pursue approval of the applications was at the heart of the controversy between the sellers and the buyer, and is asserted in the *first count* of the complaint. Moreover, even after Gross and Laughton filed their complaint, Columbia waited almost a full year to file its motion.

Third, Columbia contends that because its Motion to Dismiss, filed in March 2003, was pending until October 31, 2003, its delay in moving to disqualify should be excused because, understanding the gravity of a motion to disqualify, it waited for the outcome of the motion to dismiss, hoping that Count I would be dismissed, thus resolving the conflict. Columbia's explanation for its delay is seriously wanting. Had Columbia harbored serious concerns over Holland & Knight's supposed conflict, it could and should have filed a motion to disqualify promptly. Instead, Columbia attempted to have its cake and eat it too, strategically unleashing its delinquent motion on December 23, the eve of a major holiday. Not only was this delay unreasonable by any yardstick, but also Gross and Laughton would be severely prejudiced at this late date if they were forced to hire new counsel. Holland & Knight has represented Gross and Laughton for over four years and for over a year in this litigation. In short, Columbia's disqualification train long ago left the station, and it is now simply too late to get on board.

### (ii) The Merits

■ Even if Columbia had not waived its right to raise the disqualification issue, the Court finds that the "conflict" alleged-ly prohibited by Maryland Rule of Professional Conduct 1.9 simply does not exist in this case. First, stripped of the veneer of the corporate mechanisms used to effectuate the sale, Holland & Knight is not representing a new client against a former one, but rather is representing its long-standing clients against a buyer of their business. Second, the issues in this case and the negotiation of the Merger Agreement are not substantially related.

The Amicus brief of the Association of the Bar of the City of New York, filed in the case of *International Electronics Corp. v. Flanzer*, 527 F.2d 1288, 1292 (2nd Cir. 1975), is very instructive on this point. Like Maryland, New York's disciplinary rules include a provision prohibiting attorneys from representing a party adverse to a former client if the matters are substantially related. *Brief of the Association of the Bar of the City of New York as Amicus Curiae* at 6, (No. 75–7159). However, the New York City Bar took the position that in the case of a sale accomplished by merger into an acquisition subsidiary, the merged subsidiary does not, by reason of the merger, have the status of a former client of the seller's counsel. *Id* at 7–8. Unlike the lawyer in *Buckley*, 908 F.Supp. 299 (1995), who, a few years after representing a client in a patent infringement action acted as counsel to a patent licensee adverse to that client, Holland & Knight remains counsel to its former clients Gross and Laughton.

The facts in this case are more akin to *Flanzer*, 527 F.2d 1288 (2nd Cir.1975), than *Buckley*. In *Flanzer*, as here, the action arose from a sale and merger transaction in which the plaintiff buyer acquired the stock of a company that was merged into an acquisition subsidiary, its co-plaintiff. The Defendants were the sole former shareholders of the co-plaintiff's merger predecessor. *Id.* The Second Circuit de-

termined that the transaction resulted in the parties changing sides, not the lawyers. *Flanzer*, 527 F.2d at 1292.

> "[T]here is no claim here that the law firm seeks to represent a third party against the successor by merger and to use its secrets to the advantage of the third party. While in form the transaction here involved ended in a merger, it was, in a practical sense, a sale. The law firm and the [defendants] were on opposite sides of the negotiations which were conducted at arm's length."

*Id.* Here, Holland & Knight is not adverse to a former client; rather, the firm still represents them.

Columbia's reliance on *Tekni–Plex, Inc. v. Meyner and Landis*, 89 N.Y.2d 123, 651 N.Y.S.2d 954, 674 N.E.2d 663 (1996), is misplaced. In making its decision, the court in *Tekni–Plex* emphasized that the underlying case involved not only issues related to the parties' merger, but also issues related to the former law firm's long-term representation of Tekni–Plex. *Id* at 136, 651 N.Y.S.2d 954, 674 N.E.2d 663. The present case only deals with the actions of the parties *after* the close of the merger, not issues that occurred while Holland & Knight represented Columbia.

█ Even if the Court were to determine that Columbia should be viewed for any purposes as one of Holland & Knight's former clients, it would not change the Court's decision because "lawyers may take adverse (and thus 'disloyal') legal action against a former client, no matter how antagonistic or serious, so long as the matters are not **substantially related**." 1

Geofferey Hazard, Jr. and W. William Hodes, *The Law of Lawyering*, § 13.5 at 13–11 (3rd ed.) (emphasis in original). The only Count in which Gross and Laughton specifically named Columbia as a defendant is Count I which deals with the disputes surrounding the April 5, 2000 letter agreement. All facts pertinent to Columbia's alleged failure to act *arose after the closing*, when Holland & Knight no longer represented Columbia. Columbia counters that throughout the course of this case, the "meaning" of the Merger Agreement will be at issue. Although this appears unlikely, if its meaning becomes an issue, the appropriate solution, if any, would be to preclude any Holland & Knight attorney acting as counsel in this case from testifying as a witness to the negotiation of the Merger Agreement, not to disqualify the entire firm from acting as counsel.[5]

The fact that Columbia waited almost a full year after filing its complaint to complain of Holland & Knight's possible conflict leads the Court to believe that this motion to disqualify is not an attempt to comply with Maryland Rules of Professional Conduct, but a tactic to handicap Gross and Laughton in the most crucial stages of litigation.

### *Conclusion*

There are occasions when serious questions arise as to disqualification of a law firm from representation of a party in litigation. *See, Camden v. Maryland*, 910 F.Supp. 1115 (D.Md.1996). This is not one of them. The motion falls squarely within the category of a "technique of harass-

---

5. Rule 3.7 of the Maryland Rules of Professional Conduct contains the traditional prescription against a lawyer acting as both advocate and witness. However, part(b) of the rule provides that a "lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or

Rule 1.9." This represents a significant departure from the prior prescription under the former Code of Professional Responsibility which provided in Disciplinary Rule DR5–102(A) that both a lawyer, *or the lawyer's firm,* are precluded from serving as advocate if the lawyer ought to be called as a witness on behalf of his client.

ment" against which a cautionary note was included in the Maryland Rules of Professional Conduct. The motion was, in the final analysis, a transparent attempt to obtain a tactical advantage utilizing a matter of mere form having no substance. Being both untimely and lacking in merit, the Motion for Disqualification will, accordingly, be DENIED. A separate Order follows.

### ORDER

Upon consideration of the defendant Columbia Communication Corporation's Motion To Disqualify Holland & Knight LLP, and argument of counsel, it is this 11th day of March, 2004, by the United States District Court for the District of Maryland,

**ORDERED**, that Columbia Communication Corporation's Motion To Disqualify Holland & Knight LLP (Paper no. 49) is **DENIED**.