**KABI PHARMACIA AB,**
**et al., Plaintiffs,**

v.

**ALCON SURGICAL, INC., Defendant.**

**Civ. A. No. 91–74 LON.**

United States District Court,
D. Delaware.

June 29, 1992.

Josy W. Ingersoll, Young, Conaway, Stargatt & Taylor, Wilmington, Del. (Hugh A. Chapin, Alan T. Bowes, Arthur D. Gray, Stuart D. Sender, Richard Gresalfi of Kenyon & Kenyon, New York City, of counsel), for plaintiffs.

Robert H. Richards, III of Richards, Layton & Finger, Wilmington, Del. (John A. Diaz, John F. Sweeney, James W. Gould of Morgan & Finnegan, New York City, Garland P. Andrews, David L. Hitchcock, Eugenia S. Hansen of Richards, Medlock & Andrews, Dallas, Tex., of counsel), for defendants.

## OPINION

LONGOBARDI, Chief Judge.

Pending before the Court in this patent infringement case is a motion by the Plaintiffs, Kabi Pharmacia AB and Pharmacia, Inc. (hereinafter referred to collectively as "Pharmacia") to disqualify the law firm of Morgan & Finnegan from representing the Defendant, Alcon Surgical, Inc. ("Alcon"). Docket Item ("D.I.") 55. The Plaintiffs assert that Morgan & Finnegan has represented Pharmacia at the same time that it has represented Alcon. Pharmacia argues that this concurrent representation of Alcon violates Delaware Rule of Professional Conduct 1.7(a) and that disqualification is the appropriate remedy. Briefing has been completed and both parties have submitted affidavits in support of their positions.

## BACKGROUND

It is uncontested that Pharmacia's relationship with Morgan & Finnegan dates back at least to 1986 when Morgan & Finnegan represented Pharmacia in an appeal from an adverse judgment entered by the United States District Court for the District of Maine in *Ventrex Laboratories, Inc. v. Pharmacia AB, et al.* D.I. 57, ¶ 3 (affidavit of Carl Engholm, Vice President of Patents and Trademarks for Kabi Pharmacia AB); D.I. 68, attachment ("att.") 1, ¶ 5 (affidavit of Christopher Hu, Esquire, of Morgan & Finnegan); D.I. 68, att. 4, ¶ 6 (affidavit of John Vassil, Esquire, of Morgan & Finnegan). The *Ventrex* case involved the validity and infringement of an immunoassay patent. D.I. 57, ¶ 3; D.I. 68, att. 1, ¶ 5. The Plaintiffs concede that the subject matter of the *Ventrex* case is unrelated to the subject matter of the instant case. D.I. 59, ¶ 3 (affidavit of Arthur D. Gray, Esquire, of Kenyon & Kenyon).

Sometime in 1987, Carl Engholm, Vice President of Patents & Trademarks for Kabi Pharmacia AB, consulted Christopher Hu, Esquire, of Morgan & Finnegan in connection with a threatened patent infringement suit by Bio–Rad Laboratories, Inc. ("Bio–Rad") over U.S. Patent No. 4,704,366 ("the '366 patent"). The '366 pat-

ent involved a process for purification of monoclonal antibodies. D.I. 57, ¶ 4. In connection with this matter, Morgan & Finnegan provided Engholm with opinions, including an oral opinion on unenforceability of the patent at issue and a written opinion on patent claim interpretation and patent validity. D.I. 57, ¶ 4; *see also* D.I. 68, att. 1, ¶¶ 6, 7; att. 4, ¶¶ 9, 10. The written opinion, dated December 11, 1987, was signed by John Vassil, Esquire, of Morgan & Finnegan and reflected work by both Vassil and Hu. D.I. 68, att. 1, ¶ 7; D.I. 68, att. 4, ¶ 10; *see also* D.I. 57, ¶ 4. The parties concede that the subject matter in the Bio–Rad matter is different from the subject matter of the instant case. D.I. 59, ¶ 4; D.I. 68, att. 1, ¶ 7.

In mid–1988, Bio–Rad sued Pharmacia in the United States District Court for the Northern District of California for infringement of the '366 patent. D.I. 57, ¶ 5. The litigation of the case is being handled by Robert Stier, Esquire, of Bernstein, Shur, Sawyer, and Nelson in Maine. D.I. 56, at 3; D.I. 78, ¶ 6 (affidavit of Robert Stier, Esquire). Although Stier has substantial experience in patent litigation, D.I. 78, ¶ 2, he is not a patent attorney and associates with patent counsel in every patent case he handles. *Id.* ¶ 3.

In connection with the Bio–Rad litigation in California, Stier contacted Hu to discuss the case. By letter dated September 26, 1988, Stier requested Hu's comments on proposed discovery and a stipulated protective order. *Id.* ¶ 6 and Exhibit ("Ex.") A. The letter specifically states that "Carl Engholm has asked [Stier] to consult with [Hu] on patent matters" in the Bio–Rad matter. *Id.*, Ex. A. Stier revised the discovery in light of Hu's comment. *Id.* ¶ 7 and Ex. B.

Morgan & Finnegan did additional work on the Bio–Rad matter, including writing an opinion on noninfringement, invalidity, and unenforceability. D.I. 57, ¶ 6. In addition, Stier continued to consult Hu in connection with the Bio–Rad matter. Specifically, Hu has advised Stier about issues concerning induced infringement arising from preissuance acts, cases interpreting

the best mode requirement, and inclusion of false or misleading examples in a patent specification. D.I. 78, ¶ 10 and Ex. D. Hu also reviewed proposed pleadings, deposition transcripts, and other matters. D.I. 78, ¶¶ 10, 11, 18, 20.

In the Spring of 1990, Pharmacia waived its attorney-client privilege regarding opinions rendered to that date by Morgan & Finnegan and Hu was deposed by Bio–Rad. D.I. 68, att. 1, ¶¶ 10, 11. Also in the Spring of 1990, a meeting was held in Pharmacia's New Jersey offices and was attended by Stier, Engholm, Arthur Gray, Esquire, of Kenyon & Kenyon, and other Pharmacia people. D.I. 76, ¶ 4; D.I. 78, ¶ 14; D.I. 59, ¶ 4. Engholm and Stier state in their affidavits that no one from Morgan & Finnegan was invited to attend the meeting because Pharmacia wanted feedback from a patent attorney unfamiliar with the case and Morgan & Finnegan did not meet that criterion. D.I. 76, ¶ 4; D.I. 78, ¶ 14.

Nevertheless, even after the waiver of the attorney-client privilege and the meeting, Morgan & Finnegan continued to provide advice on the Bio–Rad matter. For example, in 1990, after Hu was deposed, Stier requested an opinion on whether Pharmacia was obligated to advise its customers that Bio–Rad had obtained a patent on a process described in Pharmacia literature. Vassil provided an eight page opinion letter to Engholm on this issue on October 15, 1990. D.I. 78, ¶ 16. On the same date, Morgan & Finnegan provided two additional opinion letters, also signed by Vassil; one was on the issue of a prior invention and the other was on Bio–Rad's misuse of its patent in conducting an overbroad licensing program. *Id.* ¶ 17. Pharmacia relied upon these opinions in various pleadings, motions, and other papers. *Id.* ¶¶ 18, 19.

Stier and Pharmacia continued to consult Morgan & Finnegan in 1991. In January, 1991, Hu reviewed an amended answer and counterclaim. D.I. 68, att. 1, ¶ 13. In March, 1991, Stier's associate, Elizabeth Collett, Esquire, consulted Hu about whether Pharmacia had an affirmative obligation to advise the Patent & Trademark

Office of a lawsuit over Pharmacia's patent. D.I. 78, ¶ 22. This question related to a suit brought by Pharmacia against Bio–Rad in New Jersey. *Id.* ¶ 21. According to Hu and Vassil, Morgan & Finnegan did not know about the New Jersey action. D.I. 68, att. 1, ¶ 19; D.I. 68, att. 4, ¶ 32.

In April, 1991, in connection with the California Bio–Rad case, Stier sent Hu a transcript of the deposition of Bio–Rad's licensing attorney and discussed with Hu Bio–Rad's licensing program and the patent misuse defense. D.I. 68, att. 1, ¶ 13; D.I. 78, ¶ 20. On June 14, 1991, Stier again consulted with Hu about the patent misuse theory, D.I. 78, ¶ 20, and, also in June, 1991, Hu reviewed a set of interrogatories from Bio–Rad. D.I. 68, att. 1, ¶ 13.

Finally, in November, 1991, Stier called Hu for recommendations for a licensing expert to testify in the damages phase of the California action. Hu recommended an expert whom Stier contacted. Because the expert had a conflict, Stier ultimately retained another expert recommended by the expert Hu suggested. D.I. 78, ¶ 23; *see also* D.I. 68, att. 1, ¶ 15. Stier never informed Morgan & Finnegan whether the expert was used. D.I. 68, att. 1, ¶ 15; D.I. 68, att. 4, ¶ 22. Stier admits not advising Hu of the outcome, but states that Pharmacia's local counsel in California had responsibility over the expert and that the expert was retained only shortly before trial. D.I. 78, ¶ 23.

Morgan & Finnegan has billed Pharmacia for services rendered, sending all statements to Engholm. Morgan & Finnegan billed Pharmacia over $40,000 for the years 1990–1991. D.I. 57, ¶ 9. The last statement for services rendered was for the month of November, 1991. *Id.* ¶ 13. *See also id.,* Ex. A (statements for services rendered by Morgan & Finnegan, September, 1988—November, 1991). The statement dated November 30, 1991, reflects one hour of work by Hu for "[t]elephone conferences with Mr. Stier concerning possible royalty experts; letter to Mr. Stier concerning patenting licensing."

In July, 1991, Morgan & Finnegan undertook representation of Alcon in the present

matter and in a related matter in Massachusetts. D.I. 59, ¶ 5. Engholm, by affidavit, states that they did not consult him regarding their representation of Alcon, nor did he ever consent to their representation of Alcon. D.I. 57, ¶ 10, 11. Engholm first became aware of Morgan & Finnegan's representation of Alcon in the Fall of 1991. *Id.* ¶ 10. He further states that it "appeared improper" to him but that "he was not aware that there was a specific prohibition of this in the United States." *Id.* ¶ 14. Engholm relayed his concern to Arthur D. Gray, Esquire, of Kenyon & Kenyon in the Fall of 1991. Engholm states that "[d]espite my clear recollection that I told [Gray] that Morgan & Finnegan was doing work for Pharmacia in connection with the Bio–Rad case, I apparently did not make clear to him that Morgan & Finnegan's representation of Pharmacia was ongoing." *Id.* Gray has submitted an affidavit stating that although he was aware that Stier represented Pharmacia in the Bio–Rad matter, he did not know that Morgan & Finnegan was providing patent advice. D.I. 59, ¶ 4. He further states that when Engholm first advised him of Morgan & Finnegan's representation of Alcon, the only representation of Pharmacia by Morgan & Finnegan of which he was aware was in connection with the then concluded Ventrex appeal.

Sometime later, Engholm mentioned Morgan & Finnegan's appearance in the present matter to Stier.[1] D.I. 78, ¶ 26; D.I. 57, ¶ 15. Stier advised Engholm that Morgan & Finnegan's representation presented an impermissible conflict of interest. D.I. 57, ¶ 15. Thereafter, Engholm again mentioned Morgan & Finnegan's representation to Gray. Gray states that, at this time it was made clear to him that Morgan & Finnegan had provided advice to Pharmacia in the Bio–Rad matter. D.I. 59, ¶ 7. Gray later concluded that Morgan & Finnegan's representation of Alcon was improper. *Id.* ¶ 8.

## ANALYSIS

■ District courts are authorized to supervise the conduct of attorneys who practice before them. This power includes the authority to

disqualify those whose conduct breaches the norms as established by the bar.

"Whenever an allegation is made that an attorney has violated his moral and ethical responsibilities, an important question of professional ethics is raised. It is the duty of the district court to examine the charge, since it is that court which is authorized to supervise the conduct of members of the bar."

*Nemours Foundation v. Gilbane, Aetna, Federal Insurance Co.,* 632 F.Supp. 418, 421–22 (D.Del.1986) (Farnan, J.) (quoting *Richardson v. Hamilton Int'l Corp.,* 469 F.2d 1382, 1385 (3rd Cir.1972), *cert. denied,* 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973)).

An attorney who fails to observe his obligation of undivided loyalty to his client injures his profession and demeans it in the eyes of the public. The maintenance of the integrity of the legal profession and its high standing in the community are important ... factors to be considered in determining the appropriate sanction for a Code violation.... The maintenance of public confidence in the propriety of the conduct of those associated with the administration of justice is so important a consideration that we have held that a court may disqualify an attorney for failing to avoid even the appearance of impropriety.

*International Business Mach. Corp. v. Levin,* 579 F.2d 271, 283 (3rd Cir.1978) (citations omitted).

■ Pharmacia asserts that Morgan & Finnegan's representation of Alcon violates Delaware Rule of Professional Conduct 1.7(a) which provides

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect

---

**1.** There is some conflict about when Engholm discussed this matter with Stier. Stier's affidavit indicates that it was in December, 1991; Engholm's states that it was in February, 1992.

the relationship with the other clients; and

(2) each client consents after consultation.

Thus, the threshold question in determining the applicability of Rule 1.7(a) is whether an attorney-client relationship existed between Morgan & Finnegan and Pharmacia when Morgan & Finnegan undertook representation of Alcon in July, 1991.

Morgan & Finnegan asserts that it has not simultaneously represented both Pharmacia and Alcon. In support of this assertion, Morgan & Finnegan has submitted affidavits which state, *inter alia*, that Morgan & Finnegan has never been asked to be counsel or associated patent counsel for Pharmacia. D.I. 68, att. 1, ¶ 13; D.I. 68, att. 4, ¶ 12. Nor has Morgan & Finnegan been listed on any pleadings. D.I. 68, att. 1, ¶ 13. Hu states that, upon being asked in July, 1991 by two of his partners what Morgan & Finnegan was doing for Pharmacia, he "advised them that [he] understood that the *Bio–Rad v. Pharmacia* litigation in California, as to which we might be trial witnesses, was still pending but that [Morgan & Finnegan] had completed all of [its] consulting assignments and had no work in progress for Pharmacia, and [he] did not know when, or if, [Morgan & Finnegan] would be asked to do anything else except possibly testify if the case went to trial." D.I. 68, att. 1, ¶ 14. Hu further asserts that

We did not participate in document production. We were not regularly or usually copied on correspondence between Mr. Stier and Mr. Engholm or between Mr. Stier and Bio–Rad's counsel. We are not in possession of the case pleadings and correspondence files. With the exception of my own depositions, I have not attended any depositions. I have not attended any hearings. We did not participate in the interviewing and selection of expert witnesses. We have not partici-

pated in the preparation of any briefs. We have not participated in the selection of trial witnesses or exhibits. We had no opportunity and were not in a position to gain knowledge about Pharmacia which would be potentially damaging to it in the Alcon case.

D.I. 68, att. 1, ¶ 13. *See also* D.I. 68, att. 4, ¶¶ 13, 15.

Stier states, however, that

[w]hen I associate with patent counsel in litigation, it is understood that they will assist me as needed in trial preparation, particularly by advising me and the client of important developments in patent law as they may pertain to the subject matter of the litigation. It is not my practice to list such associated patent counsel on pleadings, to copy them generally on correspondence, to involve them generally in depositions or document productions, or to seek their input generally in the preparation or review of most motions or other court papers, including pre-trial orders or trial briefs. I consider such matters to be my own litigation responsibilities, and believe that it would ordinarily be duplicative and unnecessarily costly to involve additional counsel in work that does not require their particular patent expertise.

D.I. 78, ¶ 4.

Morgan & Finnegan points to the Spring 1990 meeting which no one from Morgan & Finnegan attended as further evidence of the nonexistence of an attorney-client relationship. In addition, Morgan & Finnegan asserts that, with respect to the California *Bio–Rad* litigation, the firm was precluded from acting as counsel pursuant to Delaware Rule of Professional Conduct 3.7(a), since Hu was a witness in the trial of that matter and that Hu's recommendation of an expert in November, 1991, was consistent with his role as a trial witness.[2]

The Court finds Morgan & Finnegan's arguments in support of its position that Pharmacia was not a client of the firm when it undertook representation of Alcon

---

**2.** Specifically, Morgan & Finnegan asserts that the invoice in November, 1991

reflected a telephone call from Mr. Stier to Mr. Hu in which Mr. Stier asked if Mr. Vassil could also appear as a witness at the *Bio–Rad* trial, to give expert testimony.... Mr. Vassil

declined, and Mr. Hu recommended someone else.... This was consistent with both Mr. Hu's actual role and Mr. Vassil's potential role as a trial witness.

D.I. 67, at 11–12 (citations to affidavits omitted).

in July, 1991 unpersuasive. The Court does not agree that the alleged "sporadic" nature of Morgan & Finnegan's work supports a finding that there was not an ongoing attorney-client relationship. Nor does a lull in its work for Pharmacia support such a finding. *See Manoir–Electroalloys Corp. v. Amalloy Corp.*, 711 F.Supp. 188, 193 (D.N.J.1989) (law firm disqualified four years after last active work after sending client letter urging them to arrange meeting to discuss changes in tax laws). In *Manoir–Electroalloys*, the district court noted that the law firm could not "isolate any point in time at which Iacono became a 'former client,'" *id.* at 193, and that "Iacono's relationship with Hannoch [the law firm], up to and including [the time the complaint was filed], was sufficiently continuous, and the mere fortuity that he did not require more extensive or frequent services than he did cannot be the escape hatch Hannoch would have it be." *Id.* at 195.

In *IBM v. Levin*, the Third Circuit, in disqualifying a firm from representing the Plaintiff on the basis of D.R. 5–105 of the Code of Professional Responsibility, on which Rule 1.7 is based,[3] stated

> Although CBM [the law firm] had no specific assignment from IBM on hand on the day the antitrust complaint was filed and even though CBM performed services for IBM on a fee for services basis rather than pursuant to a retainer arrangement, the pattern of repeated retainers, both before and after the filing of the complaint, supports the finding of a continuous relationship.

*Id.* at 281.

Nor does the fact that Morgan & Finnegan was not listed on pleadings or other documents necessarily compel the conclusion that no attorney-client relationship existed. The Rules of Professional Conduct recognize that an attorney can fulfill many functions, including that of advisor. "As advisor, a lawyer provides a client with an informed understanding of the client's legal rights and obligations and explains their practical implications. As advocate, a lawyer zealously asserts the client's position under the rules of the adversary system." *See* Preamble to Delaware Rules of Professional Conduct. Morgan & Finnegan has pointed to nothing that requires a client to establish that an attorney is his advocate in order to establish that the attorney is also his advisor. *Cf. United States v. Costanzo*, 625 F.2d 465, 469 (3rd Cir.1980), where the Court, in the context of determining whether the attorney-client privilege had attached, observed the following

> Costanzo specifically alleges in connection with this case: "I had serious questions as to the actions my trial attorney took or did not take and again, because of our long association, I went to Mr. Paglianite for advice and assistance. We discussed trial strategy and tactics." This allegation, if proven, might be sufficient to show that Costanzo made disclosures to Paglianite in his capacity as attorney-advisor with the expectation that they would be entitled to the same protection as if Paglianite had been his attorney.

Moreover, the Court views Hu's recommendation of an expert in November, 1991, as "legal advice," not merely as consistent with his duties as a witness. Even if it did

---

**3.** D.R. 5–105 provided, in part:

(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5–105(C).

(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5–105(C).

(C) In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

D.R. 5–105 (*quoted in IBM v. Levin*, 579 F.2d at 279).

not constitute legal advice, however, the Court would find that Morgan & Finnegan's relationship with Pharmacia had not been properly terminated. As of July, 1991, there is no doubt that both Engholm and Stier believed they could rely upon Morgan & Finnegan for advice and consultation. Just as the firm in *Manoir-Electroalloys*, Morgan & Finnegan cannot "isolate any point in time at which [Pharmacia] became a 'former client.'" 711 F.Supp. at 193. Indeed, Hu's statement in July, 1991, when asked what Morgan & Finnegan's current involvement with Pharmacia was, tends to corroborate the fact that there was indeed an ongoing attorney-client relationship. Hu specifically stated that he *"did not know when, or if,* [the firm] would be asked to do anything else." D.I. 68, att. 1, ¶ 14 (emphasis added). Clearly, this establishes that there was—or should have been—a question in the minds of the Morgan & Finnegan partners about the existence of an ongoing attorney-client relationship with Pharmacia.

Finally, Morgan & Finnegan's argument that Rule 3.7(a) precluded them from acting as counsel in the *Bio-Rad* matter, presents a red herring. Rule 3.7(a) provides that

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
>
> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>
> (3) disqualification of the lawyer would work substantial hardship on the client.

Stier never contemplated that Morgan & Finnegan would act as Pharmacia's advocate at trial. Pharmacia had retained Stier for that purpose. Therefore, even assuming that Hu was a necessary witness in that matter, Morgan & Finnegan would not have been disqualified from representing Pharmacia in the capacity of advisor. Rule

3.7(a) simply was not implicated by Hu's possible testimony.

■ Morgan & Finnegan's representation of Alcon is clearly "directly adverse" to Pharmacia. Thus, the next issue is whether Morgan & Finnegan reasonably believed that the representation would not adversely affect the relationship with the other client *and* whether Pharmacia and Alcon consented after consultation.

The Court finds that Morgan & Finnegan never consulted with Pharmacia regarding its representation of Alcon. The Delaware Rules of Professional conduct provide that consultation "denotes communication of information reasonably sufficient to permit the client to appreciate the significance of the matter in question." *See* terminology section. Alcon asserts that "[i]n a discovery conference on September 26, 1991, Pharmacia was told that Morgan & Finnegan was primary counsel for Alcon." D.I. 67, at 16. Even if merely telling Pharmacia that Morgan & Finnegan represented Alcon constituted "consultation"—and such a finding would be a stretch—the "consultation" came too late. The relevant date was sometime in July, 1991. Morgan & Finnegan was required to consult with and obtain consent from both Alcon and Pharmacia *prior* to undertaking representation of Alcon. *See Manoir-Electroalloys*, 711 F.Supp. at 195 (full and effective disclosure should have been made and informed consent should have been obtained prior to filing third party complaint) [4] (citing *IBM v. Levin*, 579 F.2d at 282). Nor is there any evidence of constructive knowledge of Morgan & Finnegan's representation prior to September, 1991, which, at any rate, would not be sufficient. *Id.* (client cannot be charged with duty of recognizing conflict and stating lack of consent); *see also IBM v. Levin*, 579 F.2d at 282 (under D.R. 5-105(C), attorney bears burden of affirmatively providing disclosure and obtaining consent). At any rate, even if the Court found that Pharmacia had been consulted and had consented, the Court would find that under no circumstances could Morgan

**4.** New Jersey has adopted Model Rule 1.7 of the American Bar Association. The ABA Rule is the same as Delaware Rule of Professional Conduct 1.7.

& Finnegan have reasonably believed that the representation of Alcon would not adversely affect its relationship with Pharmacia.

■ Morgan & Finnegan finally argues that Pharmacia's motion should be denied because it is a litigation tactic which, if successful, will severely and unfairly prejudice Alcon. Morgan & Finnegan asserts that Engholm and Gray both knew of its representation in the Fall of 1991, and that Pharmacia is now relying "on non-existent facts concerning alleged involvement by Morgan & Finnegan in the New Jersey *Bio–Rad* case." D.I. 67, at 14. The firm further states that "disqualification of Morgan & Finnegan now as fact discovery rushes to completion would cripple Alcon's ability to defend itself at trial ... Pharmacia's timing in bringing its motion suggests that a primary goal of the motion is to impair Alcon's ability to defend itself by disqualifying Morgan & Finnegan at a critical time." *Id.* at 16.

In *INA Underwriters Ins. Co. v. Nalibotsky*, 594 F.Supp. 1199 (E.D.Pa.1984), the district court explained that

> [i]t is generally established that laches is not a bar to a motion to disqualify since a court's supervision of the ethical conduct of attorneys practicing before it is designed to protect the public interest and not merely the interest of the particular moving party.... However, some courts have found delay in the filing of a motion to disqualify to be relevant to the resolution of such a motion. In particular, delay may bar the presentation of a motion to disqualify if that delay reflects an attempt by the moving party to use the disqualification issue merely to gain

a tactical advantage.... In addition, it has been suggested that potential prejudice to other parties to the litigation, particularly the party whose counsel may be disqualified, may be considered in the disqualification analysis.

*Id.* at 1203 (citations omitted).

The Court does not find the delay to have been an attempt to gain a tactical advantage. With respect to Engholm's knowledge, the Court has already noted that Morgan & Finnegan had an affirmative obligation to ensure that Pharmacia "appreciated the significance" of its representation of Alcon. Nothing in the record even suggests that Morgan & Finnegan fulfilled this obligation. With respect to Gray, there is evidence that he knew in the Fall of 1991 that Morgan & Finnegan represented Alcon. Nevertheless, the Court has no basis to discredit his affidavit that he was unaware that Morgan & Finnegan was then still being consulted by Stier in connection with the *Bio–Rad* case in California. Stier is not even a member of the same firm as Gray. *Cf. IBM v. Levin*, 579 F.2d at 282–83 (Third Circuit upheld disqualification of firm even where IBM labor attorneys had retained firm to handle miscellaneous labor matters over past five years; court accepted district court's finding that IBM antitrust attorneys did not know).[5]

Although Morgan & Finnegan has been involved in the Alcon case for nearly one year and discovery is nearing completion, the Court does not agree that Alcon's ability to defend itself would be impaired. In fact, Pharmacia itself has suggested that "the order of disqualification can be fash-

---

5. Moreover, it appears that some of the delay in filing the motion to disqualify may have been due to a letter to Stier from Vassil, dated March 4, 1992, apparently sent in response to a March 3, 1992 letter from Alan Bowes, Esquire, of Kenyon & Kenyon, apprising James Gould, Esquire of Morgan & Finnegan, of Pharmacia's belief that there was a conflict of interest. D.I. 58, Ex. A. The March 4, 1992 letter from Vassil indicated that "[u]nless Pharmacia withdraws promptly, and irrevocably, any charge of conflict of interest and any attempt to have our firm removed from the Alcon litigation, this letter is notice to you that Christopher Hu and I

will not appear to testify at the Bio–Rad trial. D.I. 78, Ex. H. Vassil asserts that Morgan & Finnegan's letters to Stier were "the result of astonishment." D.I. 68, att. 4, ¶ 27. Morgan & Finnegan thereafter conditioned Hu's testimony on Engholm's agreement not to use the fact that he agreed to testify in support of a motion to disqualify. D.I. 57, ¶ 16; *see also* D.I. 58, Ex. D. Engholm agreed, and Hu "testified ... in a very professional manner." D.I. 57, ¶ 16; D.I. 58, Ex. E. After Hu's testimony on March 16 and 17, 1992, D.I. 57, ¶ 16, Pharmacia filed the instant motion. *See* D.I. 55, filed March 19, 1992.

ioned to permit Morgan & Finnegan to assist in bringing replacement counsel up to speed, or to adjourn pending discovery." D.I. 75, at 10–11. Pharmacia does not contend that Morgan & Finnegan is in possession of any information due to its earlier legal work for Pharmacia that would aid Alcon in its defense. The Third Circuit has indicated that "disqualification in circumstances such as these where specific injury to the moving party has not been shown is primarily justified as a vindication of the integrity of the bar." *IBM v. Levin,* 579 F.2d at 283 (court found turnover provisions of district court's order to be proper exercise of court's discretion).